**JESSEN et al.**

v.

**AETNA LIFE INS. CO.**

**No. 10923.**

United States Court of Appeals, Seventh Circuit.

Jan. 18, 1954.

Carlton L. Fischer, Harry D. Lavery, Chicago, Ill. (Campbell, Clithero & Fischer, Chicago, Ill., of counsel), for appellants.

Vincent O'Brien, Thomas J. Johnson, Jr., James G. Duggan, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiffs brought this suit to recover upon an insurance policy issued by defendant January 5, 1950, upon the life of Waldemar C. Jessen, averring that the insured had died on April 4, 1950. Defendant answered, admitting execution of the policy but asserting special defenses to the effect that the insured, in his application, which was made a part of the policy, had falsely answered questions as to whether he had had any previous diseases or had consulted a physician, asserting that the questions asked and the answers thereto were material to the risk accepted and the hazards assumed; that in fact defendant had consulted physicians and had experienced diseases and ailments of his heart, and that, because of the falsity, defendant was relieved of liability.

At the conclusion of the evidence the trial court directed a verdict for defendant and entered judgment dismissing the suit. On appeal plaintiffs assert that defendant did not make out a valid defense under the statutes of the State of Illinois and that the court erred in directing a verdict for defendant. Subsidiary questions are presented as to whether the court should have permitted plaintiffs to show the insured's reputation for truth and veracity and whether it erred in admitting testimony of certain witnesses to the effect that the policy would not have been issued had truthful answers been given to the questions propounded.

The court grounded its decision on Chapter 73, Section 766, Ill.Rev.Stat., which is Section 154 of the Illinois Insurance Code, and provides that no "misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to de-

ceive or materially affects either the acceptance of the risk or the hazard assumed by the company." The trial court reasoned that, under this statute, the false answers given by the insured, as a matter of law, materially affected the risk and hazard accepted and assumed by the company and, because of their falsity, relieved the company of liability.

The specific questions and answers were as follows: "Have you ever consulted a physician, specialist, or other practitioner for or suffered from any ailment or disease of * * * (b). Heart, blood vessels or lungs? Answer: No. (f). Any other disease or ailment or any injury not mentioned above? Answer: No. (h). Has anyone found your blood pressure abnormal or unusual? Answer: No. (i). Have you ever had pains or discomfort in the chest or shortness of breath? Answer: No." On the record before us it can not be disputed that the answers were false. Thus it was shown beyond question that in 1942 the insured had consulted his regular physician because he had experienced a series of fainting spells, coupled with pains in his chest; that such attacks had occurred at times when he was seated at his desk and at others when he was on his way home from his place of business in his automobile and that at least three or four of these attacks were major in character. In October, 1942, at the suggestion of his employer, he consulted Dr. Maher, a qualified and experienced practitioner who specializes in heart diseases. After receiving Mr. Jessen's statement as to his fainting attacks and the pain in his chest, the physician examined him thoroughly and reached a tentative diagnosis of coronary sclerosis and angina pectoris, both ailments of the heart, the former, one of the blood vessels and arteries, and the other, a hardening of the coronary arteries, which increases the heart beat and causes pain in the region of the heart and chest. He advised the patient of his diagnosis and wrote a somewhat detailed report to the insured's employer, who in turn, delivered it to Jessen.

In November, 1942, Dr. Maher again examined Jessen, who reported that, in the 30 days elapsing since the first examination, his chest pains had become increasingly frequent and severe, indicating, according to the physician, that he had suffered a closure of one of the minor arteries of the heart. However, upon examination, the doctor found no objective evidence of such closure but felt more certain of the correctness of his former opinion that the patient had coronary sclerosis and angina pectoris, so advised him and prescribed medicine to control the pain arising from the angina and to increase the circulation in the arteries of the heart. Other details as to which the doctor testified, partially included in his letter, led to his opinion that certain other heart and circulatory difficulties existed in the patient, including a slightly increased blood pressure. All the symptoms suggested to Dr. Maher the possibility that Jessen might experience an acute coronary occlusion in the future. As a matter of fact he died on April 4, 1950 of acute coronary occlusion, due to angina pectoris of several months duration.

The evidence recounted is undisputed, so that it is established as a fact that when Jessen stated that he had never consulted a physician or specialist for, or had suffered from, any ailment or disease of the heart, blood vessels or lungs, when he represented that no one had found his blood pressure abnormal or unusual and when he stated that he never had pains or discomfort in his chest or shortness of breath, he was not telling the truth. On such evidence, alone, it was the duty of the court to direct a verdict for defendant if the misrepresentations were within those defined by the statute as sufficient to avoid the policy.

Plaintiffs contend that the misrepresentations of Jessen are not within the statute, for the reason that there is no proof (1) that they were made with actual intent to deceive and (2) that they materially affected either the acceptance of the risk or the hazard assumed by

the company. In other words, plaintiffs argue that, under this statute, all the alternative requirements for avoidance of the contract must occur and that a misrepresentation including only one of them is insufficient, whereas defendant earnestly insists that the statutory clauses are disjunctive in character and that a showing of false representations materially affecting the risk or increasing the hazard is sufficient to avoid the policy.

The question of the character of misrepresentation sufficient to avoid an insurance policy has led to confusion in the Illinois decisions. With reference to the cases arising prior to the enactment of the Insurance Code, we may generalize somewhat as follows: (1) When the court determined that a statement in an application for insurance was a warranty, the policy would be declared void, if the statement was false, regardless of scienter; (2) Under the majority rule at law, when a statement in an application was found to be a representation, a policy issued thereon would be avoided if the statement was false, material to the risk and made by the insured with intent to deceive; (3) Under the rule in equity and the minority rule at law, a representation would avoid a policy if false and material to the risk, irrespective of the knowledge of the insured at the time the representation was made and whether or not it was innocently made. See, Havighurst, Some Aspects of the Illinois Insurance Code, 32 Ill.L.R. 391, 402 et seq., and cases there cited.

Although the statute seems to be clear and free from ambiguity, its interpretation by the Illinois courts is confused. Hamberg v. Mutual Life Ins. Co., 322 Ill.App. 138, 54 N.E.2d 227, the only opinion of an appellate court purporting to construe the quoted language resulted in a legal incongruity. There, the insured stated that he had not consulted a physician, that he had never had abnormal blood pressure and that no sugar or other abnormality had ever been found in his urine. These statements were false. For the court, Mr. Justice Niemeyer

said, 322 Ill.App. at pages 143–144, 54 N.E.2d at page 229, "It is unnecessary to make a holding as to whether the misrepresentations were made with actual intent to deceive. Recovery must be denied if any of the misrepresentations materially affected the acceptance of the risk or the hazards assumed by the company. * * * The trial court should have held as a matter of law that the policy was avoided because of misrepresentations which materially affected acceptance of the risk, as well as the hazards assumed by the´ company." Although this should have laid the issue to rest, the other two justices concurring in the result, expressed the opinion, somewhat equivocally, that Section 154 should be construed in the conjunctive, and that "the word 'or' after the word 'deceive' should be construed to mean 'and'." Thus, the opinion presents the paradox of a court opinion being rendered by a minority vote. The latter construction was cited with approval in Mid-States Ins. Co. v. Brandon, 340 Ill. App. 470, 473, 92 N.E.2d 540. The only question involved in the latter case, however, was whether a misrepresentation as to ownership of an automobile in a property damage and personal injury policy was material to the risk assumed by the company. Plaintiffs' contention finds support also in Globe Mut. Life Ins. Ass'n v. Wagner, 188 Ill. 133, 58 N.E. 970, 52 L.R.A. 649; Joseph v. New York Life Ins. Co., 219 Ill.App. 452, decided prior to the enactment of the Code, and in a dictum in Nogulich v. Metropolitan Life Ins. Co., 317 Ill.App. 411, 421, 46 N.E.2d 396, decided since the enactment of Section 154.

We are of the opinion, however, that the better reasoned Illinois decisions clearly support defendant's construction of the statute to the effect that proof that a representation is false and material constitutes a sufficient defense, without proof of intent to deceive. In Weinstein v. Metropolitan Life Ins. Co., 389 Ill. 571, at page 577, 60 N.E.2d 207, at page 210, involving a factual situation strikingly similar to that here, the court

said: "The decisive issue thus presented is whether there is any evidence in the record, which, when [construed most favorably] to defendant, constitutes proof of materiality of any of the negative answers made by Weinstein. * * * Misrepresentations will avoid a policy of life insurance if they are, in fact, false and material to the risk, even though the applicant acted through mistake or in good faith. Western & Southern Life Ins. Co. v. Tomasun, 358 Ill. 496, 193 N.E. 451. * * * In short, does the evidence afford a legitimate basis for the jury's conclusion that Weinstein's representations were so material as to affect the issuance of the policies?" Again 389 Ill. at page 578, 60 N.E.2d at page 210, "The obvious purpose of eliciting information concerning examination at a clinic or by a physician is to afford an insurer an opportunity of ascertaining pertinent medical data as to the current physical condition of an applicant to supplement information already in its files. Knowledge thus obtained effectively places an insurer in a position to decide what type of policy, if any, may be issued and the premium to be charged. This important provision should not be subject to defeat, at the whim of an applicant, by his mere denial of the visits. * * * an insurer is entitled to a truthful answer with respect to observation and examination at a clinic or by a physician, and failure of an applicant to acquaint it with this information may well be material to the risk." In Cox v. Equitable Life Assur. Soc., 333 Ill.App. 207, at page 212, 76 N.E.2d 529, at page 531, the court said, "Our Supreme and Appellate Courts have frequently held that false representations in an application for a policy of insurance, if they are material to the risk, will void the policy." To the same effect are Traut v. Pacific Mutual Life Ins. Co., 321 Ill.App. 374, 53 N.E.2d 262, and Continental Assur. Co. v. McCarty, 302 Ill.App. 10, 23 N.E.2d 385, decided since the passage of the Code, involving misrepresentations made in applications for policies of life insurance. In the latter case the court said, 302 Ill.App.

at page 16, 23 N.E.2d at page 388, "The lower court properly found that the representations made in answer to question 15 were false and were material to the risk, upon which the company relied and was induced to issue the insurance policy. Aside from the evidence tending to prove that the material misrepresentations were made knowingly, that fact is not controlling under the evidence herein."

McMahon v. Continental Assur. Co., 308 Ill.App. 27, 30 N.E.2d 959, was an appeal from an order striking defendant's defense to a suit on a life policy on allegations of material misrepresentations as to medical history of the insured in an application for reinstatement of a lapsed policy. The court reversed and remanded the cause to the trial court, saying, 308 Ill.App. at page 34, 30 N.E. 2d at page 961, "Where a policy of insurance has been reinstated and the insurer asserts that the reinstatement is invalid because obtained by false representations in the application * * * *which materially affected the risk* or the hazard assumed *or were made with intent to deceive* as to the insurability of the assured [this pleading states a good defense to avoid the policy]". (Emphasis supplied.) Although this case arose after the enactment of the Code, Section 154 was not cited in the opinion.

The issue in these cases is well stated and cogently resolved by the court in Tanner v. Prudential Ins. Co., 283 Ill. App. 210, at pages 216–219: "Regardless of whether or not Tanner was afflicted with a cancer when he answered the questions and signed the application * * * and regardless of whether or not he knew that he was so afflicted, the real question presented for our determination is whether Tanner answered truthfully the questions * * * as to his previous condition of health and medical history or whether he was guilty of misrepresenting material facts in connection with same. * * * Even *though we assume that insured was honest* in making his answers, counsel for plaintiff's argument that the judgment should be sustained on that ground can have no force or effect in view of the

latest expression of our Supreme Court in Western & Southern Life Ins. Co. v. Tomasun, [358 Ill. 496, 193 N.E. 451] * * *. It is urged by plaintiff that the falsity of Tanner's answers, his knowledge with respect thereto, his intent to defraud and the materiality of his representations were [all questions of fact for] the jury and resolved in plaintiff's favor. The difficulty with this position is that the verdict was against the manifest weight of the evidence, inasmuch as the undisputed evidence shows conclusively that the answers to the questions were false and concerned material facts. * * * [T]he law is well settled in its application to insurance contracts that a misrepresentation of a material fact, in reliance upon which a contract of insurance is issued, will avoid the policy. (Citations omitted.) * * * We are of the opinion that the answers to the questions propounded * * * *were untrue and that they were answers concerning material facts, which, if known to defendant * * *, could well have caused it to have refused to issue the policy in question."* (Emphasis supplied.)

■ Giving full effect to the rule that this court must apply the law of the forum, in view of the conflict in Illinois decisions, we may well conclude that the courts of Illinois would follow their best reasoned decisions which give full recognition to the expression of legislative intent in Section 154. This results in placing a policy of insurance in its true perspective, namely, a specific type of contract, governed generally, by the settled principles of the law relating to contracts. The view that intent to deceive is a necessary element of this defense is beneficiaries' law, making ownership of insurance a right but denying to the insurer the latter's rights in the bargaining process. We shall not burden the insurer with the necessity of proving actual fraud as a condition for relief on a policy procured through undisputed material misrepresentations of fact made by the insured.

■ Plaintiffs argue that they were not, by the answer of defendant, sufficiently advised of the defense urged at the trial. We have seen that the answer charged the making of the misrepresentations in detail, pointed out wherein they were false and specifically asserted that they materially affected the risk accepted and increased the hazard assumed, with the result that the policy issued in reliance thereon was void. The record discloses no surprise to plaintiffs, and reflects likewise, no motions for a more particular statement of defenses as provided by the federal rules.

■ Obviously, Illinois rules as to procedure are not applicable, for, under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the District Court was bound to apply only the substantive laws of the State and was under the obligation to follow the federal procedural rules. Rule 8(e) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides that a party may state as many separate defenses as he has, regardless of consistency. Multiple defenses are valid, and if any one of them is sustained, it is fatal to plaintiffs' cause of action. Fidelity & Deposit Co. of Maryland v. Krout, 2 Cir., 146 F.2d 531.

In view of our conclusion as to the effect of the falsity of the answers and the propriety of the District Court's direction of the verdict upon the evidence bearing upon the falsity and truth of the answers, we do not reach any question as to alleged error upon the part of the court in admitting further evidence as to the reliance of defendant upon the misrepresentations. Nor do we reach the question of whether the court rightfully denied plaintiffs the right to offer evidence of the deceased's reputation for truth and veracity, for the answers given were indisputably false. His good reputation could not alter that decisive fact.

The judgment is

Affirmed.